Matt Valenti (SBN 253978)
AntiCancer, Inc.
7917 Ostrow Street
San Diego, CA 92111
Tel:  (619) 654-2555
Fax: (619) 268-4175
Email: mattvalenti@anticancer.com

Attorney for Defendant AntiCancer, Inc.

# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MAUNA KEA TECHNOLOGIES,<br><br>　　　　Plaintiff,<br><br>v.<br><br>ANTICANCER, INC.,<br><br>　　　　Defendant. | Civil Action No. 11cv1407 AJB JMA<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ANTICANCER'S MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION**<br><br>**Date: November 10, 2011**<br>**Time: 1:30 p.m.**<br>**Location: Courtroom 12**<br>**Judge:  Hon. Anthony J. Battaglia** |

　　　　Defendant, AntiCancer, Inc. ("AntiCancer") submits the following brief in support of its motion to dismiss this declaratory judgment action.

## INTRODUCTION

　　　　Mauna Kea's Complaint seeks declaratory rulings that each of seven (7) different AntiCancer patents is invalid, unenforceable and not infringed.  However, Mauna Kea has not alleged sufficient facts to establish any basis for this Court to issue any declaratory rulings on any of the patents.

As shown below, Mauna Kea had the burden of establishing subject matter jurisdiction for its declaratory judgment claims, which required a showing "that there is a substantial controversy, between the parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment".

Mauna Kea Technolgies ("Mauna Kea") did not meet its burden. As its basis for subject matter jurisdiction, it relies solely on (a) two letters that it received from AntiCancer in early 2006, nearly *six (6) years ago*; and (b) a single letter that it received in 2010 from AntiCancer's (now) former counsel, which asked for information regarding Mauna Kea's activities, but did mention any of the seven patents and did not allege any infringement of any of the patents.

One can only guess at Mauna Kea's possible motives for wanting to provoke a protracted legal dispute with AntiCancer over much of AntiCancer's patent portfolio. Regardless, the fact remains that any "controversy" between the parties is being generated entirely by Mauna Kea and is entirely one-sided. Mauna Kea has not established the existence of any controversy between AntiCancer and Mauna Kea that is both "substantial" and "immediate" and "real". The Court should exercise its broad discretion to dismiss this declaratory judgment action.

## **LEGAL STANDARDS**

In <u>Medimmune, Inc. v. Genentech</u>, Inc., 549 U.S. 118, 127 S.Ct. 764 (2007), the Supreme Court held that, in order for a court to have jurisdiction over a declaratory judgment action:

> Basically, the question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

127 S.Ct. at 771 (internal citation and quotations omitted).

Thus, any "controversy" must be substantial, immediate and real to give rise to declaratory judgment jurisdiction.

/ / /

## ANALYSIS

As noted above, Mauna Kea's declaratory judgment action is based entirely on its allegations regarding two letters that it received from AntiCancer's President in early 2006, almost six years ago, and regarding a single letter that it received from AntiCancer's (now) former outside counsel in November of 2010. The letters do not give rise to subject matter jurisdiction for Mauna Kea's declaratory judgment action.

Mauna Kea purported to characterize the letters in its Complaint, but did not include them as part of the record. The letters are attached as Exhibits 1-3 to the Declaration of Matthew D. Valenti ("Valenti Decl.") filed in support of AntiCancer's motion.

### The 2006 Letters

The 2006 letters referenced in the Complaint are attached as Exhibits 1 and 2 to the Valenti Declaration. The letters were sent by AntiCancer's President, Dr. Robert M. Hoffman, in connection with his proposal for Mauna Kea to take a license under AntiCancer's "GFP" related patent portfolio,[1] to benefit any third parties who might be using Mauna Kea's fluorescent imaging devices to practice AntiCancer's patented technology.

The first letter (Exhibit 1), dated January 17, 2006, introduced AntiCancer and its GFP-related patent portfolio. The letter included a listing of AntiCancer's U.S. and foreign patents and patent applications in the field of GFP-based fluorescence optical imaging, to show what would be included in the proposed license. The letter described the patents in very general terms, saying, "these patents are directed to research tools for analyzing the effect of therapeutic protocols and drugs *in vivo* and all other applications of *in vivo* imaging with fluorescent proteins." The letter did not actually discuss any specific patents in any detail and did not specifically accuse Mauna Kea of infringing any particular patents.

---

[1] The term "GFP" refers generally to "green fluorescent protein".

The second letter (Exhibit 2), dated March 22, 2006, was similar to the first letter. Like the first letter, the second letter did not discuss any patents in any detail and did not specifically accuse Mauna Kea of infringing any particular patents.  Mauna Kea opted not to take any license under any of AntiCancer's GFP-related patents.

Even if the 2006 letters had expressly accused Mauna Kea or its customers of infringement, they were sent nearly six years ago, so any controversy they might have created at the time would not have been "immediate" when Mauna Kea filed this declaratory judgment complaint, as the law requires.

### The 2010 Letter

Almost five years later, on November 22, 2010, Dan Lawton, AntiCancer's (now) former outside counsel, sent a letter to Mauna Kea asking for information regarding Mauna Kea's GFP-related activities. A copy of the letter is attached as Exhibit 3 to the Valenti Declaration.

The stated purpose of the letter was "to seek answers to certain questions in order to satisfy concerns which my client has concerning work by Mauna Kea Technologies which may implicate [AntiCancer imaging patents]." Mr. Lawton did not "demand" answers. He did not purport to invoke the Federal Rules of Civil Procedure and his questions were not "in the nature of interrogatories or requests for admissions" as Mauna Kea alleges in ¶15 of its complaint.

The letter did not mention or discuss any patents. The letter did not accuse Mauna Kea of infringement, generally or with respect to any specific patent. Indeed, the letter expressly stated, "Please note that this letter is a request for information. It is not the purpose of this letter to accuse your company of any infringement of any patent or any other misconduct."

It was AntiCancer's prerogative to request information from Mauna Kea regarding their activities, and it was Mauna Kea's prerogative to refuse to provide the information. At the very least, however, it was clear from the 2010 letter that AntiCancer was ***not*** in a position to bring any infringement claims against Mauna Kea at the time, for at least the reason that it lacked full information upon which to base any such claims. AntiCancer asked for the information and Mauna

1  Kea refused to provide it.  AntiCancer did nothing to provoke Mauna Kea or to create any "real" or
2  "immediate" controversy.
3         The fact that AntiCancer has previously asserted its patents against other third parties in this
4  Court, but has not asserted them against Mauna Kea, simply highlights the lack of any real and
5  immediate controversy between the parties.
6         Even if the 2010 letter had suggested the possibility of some future controversy, there was
7  nothing to give rise to any actual controversy of any actual <u>substance</u> with respect to each (or any) of
8  the seven specific patents that Mauna Kea decided to include in its Complaint.
9         For example, what was there about the 2010 letter that would create any actual, <u>substantial</u>
10  controversy with respect to U.S. Patent No. 6,235,967, one of the patents that Mauna Kea decided to
11  include in its declaratory judgment complaint?  The answer is:  Nothing.  That patent wasn't even
12  mentioned in the 2010 letter (or in the 2006 letters), either generally, specifically, or in relation to any
13  Mauna Kea product or practice.  The same is true for the other six patents that Mauna Kea decided to
14  include in its complaint.  The 2010 letter did not even mention any specific patent(s).  There was
15  nothing about the 2010 letter that created any actual, substantial controversy with respect to any
16  patents, either generally, specifically, or in relation to any Mauna Kea product or practice.
17         The 2010 letter did not create a controversy of any <u>substance</u> with respect to any of the specific
18  patents that Mauna Kea decided to include in its Complaint, or with respect to any specific Mauna Kea
19  products or practices.  Indeed, at ¶15 of its Complaint, <u>Mauna Kea expressly admitted that it does not</u>
20  <u>actually believe that AntiCancer intends to assert any of its patents against Mauna Kea</u>.  Where, then,
21  is the controversy?
22         The Supreme Court's <u>Medimmune</u> decision requires more.  To establish declaratory judgment
23  jurisdiction, a controversy must be "substantial" and "real" and "immediate."  The controversies that
24  Mauna Kea is trying to generate are neither "substantial" nor "real" nor "immediate."
25
26  / / /
27
28  MEMORANDUM OF POINTS AND AUTHORITIES SUPPORT OF ANTICANCER'S MOTION TO DISMISS    5    11cv1407 AJB JMA

**Mauna Kea Has Been Looking For An Excuse to Provoke a Fight with AntiCancer Over AntiCancer's Patent Portfolio**

If there is any controversy over AntiCancer's patents, it is not a controversy that AntiCancer created. Mauna Kea has been driving any controversy on its own, looking for an opportunity to provoke a fight with AntiCancer over AntiCancer's patent portfolio.

Within two short weeks after it received Mr. Lawton's 2010 letter (a period that included the Thanksgiving Holidays), Mauna Kea had already prepared and filed a declaratory judgment action in the Eastern District of Pennsylvania, seeking declarations of invalidity and non-infringement for the same seven (7) AntiCancer patents that Mauna Kea is now tying to attack through this declaratory judgment action. The Pennsylvania action was dismissed on May 5, 2011. After that, AntiCancer did not take any action to accuse Mauna Kea of infringement, or to assert any patent infringement claims against Mauna Kea.

None of the seven (7) patents has ever been discussed in any detail in any communication from AntiCancer. AntiCancer has never specifically accused Mauna Kea of infringing any of the seven (7) patents. Anticancer has never threatened to assert any of the seven (7) patents against Mauna Kea or any of its customers.

One can only guess at Mauna Kea's possible motives for wanting to provoke a protracted legal dispute with AntiCancer over AntiCancer's patent portfolio. Perhaps Mauna Kea is doing it for tactical reasons, in an attempt to obtain a *de facto* retroactive, royalty free license under AntiCancer's patents for its past activities. Mauna Kea knew (from the 2010 letter) that AntiCancer lacked information regarding Mauna Kea's activities, and that AntiCancer had not asserted any infringement claims against Mauna Kea. Mauna Kea refused to provide any information to AntiCancer when AntiCancer's former counsel asked about Mauna Kea's activities in his 2010 letter. Yet, if this action is allowed to proceed, AntiCancer will be put in the position of having to either (1) assert counterclaims of infringement (which it has not previously done); or (2) waive any such claims, because they would be considered "compulsory" counterclaims in this declaratory judgment action. Polymer Indus. Prods. Co. v. Bridgestone/Firestone, Inc., 347 F.3d 935, 938 (Fed. Cir. 2003).

It is unfair for Mauna Kea to hide its activities from AntiCancer (or to refuse to provide information to AntiCancer regarding those activities) and to then use a declaratory judgment action to force AntiCancer into either asserting its patents against Mauna Kea or waiving any claims that might exist against Mauna Kea.

Regardless of Mauna Kea's motives for wanting to provoke a fight with AntiCancer of its patents, the fact remains that any "controversy" between the parties is being generated solely by Mauna Kea and is entirely one-sided. There is no controversy between AntiCancer and Mauna Kea that is both "substantial" and "immediate" and "real". The Court should exercise its broad discretion to dismiss this declaratory judgment action.

## CONCLUSION

The Court should grant AntiCancer's motion and dismiss Mauna Kea's declaratory judgment action for lack of subject matter jurisdiction.

Respectfully submitted:

Dated: August 22, 2011          By:     /s  Matt Valenti
                                        Matt Valenti
                                        E-mail:  mattvalenti@anticancer.com

## CERTIFICATE OF SERVICE

I hereby certify that, on August 22, 2011, the foregoing document entitled **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ANTICANCER'S MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION** was filed via the Case Management/Electronic Case Filing (CM/ECF) system, with service to be made on all parties via the automated generation and e-mailing of a Notice of Electronic Filing (NEF) by the CM/ECF system.

/Matt Valenti
Matt Valenti
E-mail: mattvalenti@anticancer.com