YOUNG & THOMPSON
Jeffrey M. Goehring, 233002
jgoehring@young-thompson.com
Douglas V. Rigler
drigler@young-thompson.com
Jeffrey R. Snay
jsnay@young-thompson.com
209 Madison Street, Suite 500
Alexandria, Virginia 22314
Telephone: (703) 521-2297
Facsimile: (703) 685-0573

THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT CALIFORNIA

MAUNA KEA TECHNOLOGIES,

                Plaintiff,

v.

ANTICANCER, INC.

                Defendant.

Civil Action No.  11-cv-1407 AJB JMA

**MAUNA KEA TECHNOLOGIES' OPPOSITION TO ANTICANCER, INC.'S MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION**

      Mauna Kea brings its claims pursuant to the Declaratory Judgment Act, which provides that, "[i]n a case of actual controversy within its jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration . . . ." 28 U.S.C. § 2201(a). Although this jurisdiction is discretionary, the Supreme Court has emphasized a "virtually unflagging obligation of the federal courts to exercise the jurisdiction given them," *Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976).

      Determining whether declaratory judgment jurisdiction arises is a case-specific inquiry, particularly since the Supreme Court's decision in *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007).  In *Medimmune*, the Supreme Court rejected the "reasonable-

apprehension-of-suit test"[1] that was previously used to determine whether declaratory judgment jurisdiction existed and replaced it with the following inquiry:

> Whether the facts alleged, under all circumstances, show that there is a substantial controversy between parties having adverse legal interests of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

*MedImmune* at 127.  In the patent context, as here, the alleged injury is "a restraint on the free exploitation of non-infringing goods."  *Caraco Pharm. Labs., Ltd. v. Forest Labs. Inc.*, 527 F.3d 1278 (Fed. Cir. 2008) (quoting *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 102-03 (1998)).

Attached hereto as Exhibit 1 is the *complete* correspondence between the parties, including the February 9, 2006 letter from Mauna Kea's counsel to Dr. Hoffman of AntiCancer, the April 6, 2006 letter from Mauna Kea's counsel to Dr. Hoffman, and the November 22, 2010 email accompanying a November 22 letter from AntiCancer's counsel to Mauna Kea's counsel.  Each of these was excluded from the correspondence attached as exhibits to AntiCancer's motion.

The correspondence begins with the January 17, 2006 letter from AntiCancer's founder and CEO, Dr. Robert Hoffman, to Dr. Sacha Loisseau of Mauna Kea.  The letter specifically identifies six patents as well as unspecified "pending world-wide patents" and alleges that "[i]t is clear" that the "prime use" of the instruments sold and promoted by Mauna Kea is to practice the imaging techniques claimed in AntiCancer's patents and

---

[1] The reasonable-apprehension-of-imminent suit test stated that, to determine whether there is an actual controversy in a suit requesting a declaration of patent non-infringement or invalidity, there must be both "(1) an explicit threat or other action by the patentee which creates a reasonable apprehension on the part of the declaratory judgment plaintiff that it will face an infringement suit; and (2) present activity by the declaratory judgment plaintiff which could constitute infringement, or concrete steps taken with the intent to conduct such activity."  *Teva Pharms. USA, Inc. v. Pfizer, Inc.*, 395 F.3d 1324, 1332 (Fed. Cir. 2005) *abrogated by MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118 (2007).

Opposition to Motion to Dismiss                2

pending applications. The letter states, "Therefore, **it is necessary** for Mauna Kea Technologies <u>to have a license from AntiCancer to sell this instrument</u>." (emphasis added) The letter goes on to dictate conditions for the demanded licenses, noting that the license will provide Mauna Kea's customers "full rights to sell and use" Mauna Kea's product. The letter closes by requesting AntiCancer to designate a person to "begin negotiations."

In response, Manua Kea's counsel wrote back to Dr. Hoffman in a letter of February 9, 2006, informing AntiCancer that its license demand was "far too broadly stated." AntiCancer did not provide any specifics regarding the alleged infringement and was vague with regard to the pending applications. In order to assist a good faith evaluation of AntiCancer's assertions that a license was "necessary", Mauna Kea's counsel requested an identification of the specific patent claims alleged to be infringed and the specific products accused, as well as the identity of and copies of the pending applications referenced by Dr. Hoffman.

Dr. Hoffman's response of March 22, 2006 (sent directly to Dr. Loisseau rather than Mauna Kea's counsel as requested) did not address *any* of the concerns of Mauna Kea's counsel. Rather, Dr. Hoffman again alleged that AntiCancer's patents "**clearly cover**" Mauna Kea's product "<u>and its application</u>." (emphasis added) His letter included a "term sheet" requiring the payment of hundreds of thousands of dollars.

Mauna Kea's counsel wrote back to Dr. Hoffman, again noting that it was unreasonable for AntiCancer to alleged infringement in such unspecified terms. Manua Kea was unwilling to consider negotiation of a license without knowing at least which patent claims of which patents were asserted to cover which products or activity and in what manner.

Opposition to Motion to Dismiss              3

Four years later, AntiCancer's counsel contacted Mauna Kea's counsel with a letter of November 22, 2010. The letter was accompanied by an email that acknowledged the prior 2006 correspondence, stating that Mauna Kea's counsel was being contacted "based on review of prior correspondence."

AntiCancer's letter demanded responses to a series of pointed questions regarding Mauna Kea activities "during the past six years." The questions are clearly related to claims in the patents asserted in 2006, and even include many of the same phrases and language used such claims. Moreover, the request for information on activity in "past six years" is clearly a reference to the 6 year statute of limitations for damages on patent infringement. 35 U.S.C. § 286. The letter also included a deadline for a response, allowing eight days for Mauna Kea answer the questions posed.

This case is highly analogous to *Micron Tech., Inc. v. Mosaid Tech., Inc.*, 518 F.3d 897, 901-902 (Fed. Cir. 2008), in which a patent owner sent four infringement warning letters to an accused infringer between June 6, 2001 and July 19, 2002 and also began enforcing its patents in court against the top competitors in the business and achieved settlements with the three other largest producers by mid-2005. In June of 2005, the accused infringer filed a declaratory action following the aggressive comments concerning litigation strategy by the patent owner in its annual report and in an earnings conference call with analysts. *Id.* The Federal Circuit rejected the patent owner's argument that the four-year lapse of time since the infringement letters were sent precluded jurisdiction and found that declaratory judgment jurisdiction existed. *Id.*

Here, the parties' correspondence in 2006 clearly established a real and substantial dispute. The four years since that time does not eliminate the immediacy of that dispute in light of AntiCancer's extreme litigiousness with all the major competitors in the market, and in light of AntiCancer's renewal of the dispute with Manua Kea with its letter of November 2010.

Opposition to Motion to Dismiss          4

AntiCancer asserted no fewer than the following nine lawsuits for patent infringement in the Southern District California, almost all of which assert the same patents at issue here:

- 3:05-cv-00448-JLS-AJB filed 03/07/2005 asserting patent Nos. 6,232,523; 6,235,968; 6,251,384; 6,649,159; 6,759,038;

- 3:07-cv-00097-JLS –RBB filed 01/12/2007 asserting infringement of patent Nos. 6,232,523; 6,235,968; 6,251,384; 6,649,159; 6,759,038;

- 3:07-cv-00778-JAH-BLM filed 04/27/2007 asserting infringement of patent Nos. 5,491,284 and 5,569,812, as well as various other claims;

- 3:07-cv-02294-MMA-BLM filed 12/07/2007 asserting infringement of patent Nos. 5,998,191; 6,066,467; 6,140,102; 6,448,446; and 6,468,762; as well as various other claims

- 3:07-cv-01004-JLS –AJB filed 06/01/2007 asserting infringement of patent Nos. 6,232,523; 6,235,968; 6,251,384; 6,649,159; 6,759,038;

- 3:09-cv-00351-JLS –RBB filed 02/23/2009 asserting infringement of patent Nos. 6,251,384; 6,649,159; 6,759,038;

- 3:09-cv-01311-AJB –JMA filed 06/17/2009 asserting infringement of patent Nos. 6,251,384; 6,649,159; 6,759,038;

- 3:10-cv-02343-JAH –JMA filed 11/15/2010 asserting infringement of patent Nos. 6,649,159 and 6,759,038;

- 3:10-cv-02515-MMA –BLM filed 12/08/2010 asserting infringement of patent Nos. 6,649,159 and 6,759,038 as well as various other claims

An aggressive litigation strategy on the part of the patent owner supports a finding of an actual controversy. *Micron Tech.* at 897 (Fed. Cir. 2008) (noting that patentees aggressive licensing and litigation strategy amply supports a real and substantial dispute between the parties); *In re Casino De Monaco Trademark Litig.*, 2010 U.S. Dist. LEXIS 33950 (S.D.N.Y. Mar. 31, 2010) ("While a threat of suit is not necessary to declaratory judgment jurisdiction, an aggressive litigation strategy (such as what was demonstrated in this three year litigation) may signal the existence of an actual controversy."); *Pharmanet, Inc.v. DataSci, LLC*, 2009 U.S. Dist. LEXIS 11661 (D.N.J. Feb. 17, 2009) ("Circuit and several other courts have held

Opposition to Motion to Dismiss                          5

that a patentee's history of litigation with other parties is an appropriate factor for courts to consider in determining whether subject matter jurisdiction exists under the Declaratory Judgment Act.")

As in *Micron Tech.*, the four year lapse of time, in light of AntiCancer's intervening litigation and its 2010 letter, does nothing to extinguish the dispute between the parties established in 2006.

AntiCancer's characterization of its 2010 letter as merely a "request for information" and not an accusation of infringement is both immaterial and disingenuous.  Post-*MedImmune* decisions are clear that threat of a lawsuit is not required in order to establish that there is an actual controversy between the parties.  *Sony Elecs., Inc. v. Guardian Media Techs., Ltd.*, 497 F.3d 1271 (Fed. Cir. 2007).  Neither is a reasonable apprehension of a lawsuit a requirement.  *Id.*  Also, AntiCancer has possessed sufficient information regarding Mauna Kea's activities to accuse Mauna Kea of infringement since at least AntiCancer's 2006 accusations of infringement.  Since that time, information regarding the use of Mauna Kea products has only become more publicly available through advertisements, scientific articles, and actual use in the marketplace.

This emphasizes the disingenuous nature of AntiCancer's attempt to explain away its letters as merely seeking information which is unattainable to AntiCancer.  And, AntiCancer's assertion of the necessity of a license for products which AntiCancer states are "clearly covered" by the large and undifferentiated group of AntiCancer patents exposes the incredulous nature of AntiCancer's contrived explanation.

The Declaratory Judgment Act exists precisely for situations such as this. "The purpose of the Declaratory Judgment Act . . . in patent cases is to provide the allegedly infringing party relief from uncertainty and delay regarding its legal rights." *Micron Tech.* at 902.  Mauna Kea is not required to operate under a cloud of uncertainty as to whether not AntiCancer will conclude that its activity is infringing.

Opposition to Motion to Dismiss            6

September 7, 2011

YOUNG & THOMPSON

By: /s/ Jeffrey M. Goehring
Jeffrey M. Goehring, 233002

**CERTIFICATE OF SERVICE**

The undersigned certifies that the within Opposition to Motion to Dismiss was served by the Court's ECF system upon the below listed counsel of record this 7th day of September, 2011.

Matthew D. Valenti
AntiCancer, Inc.
7917 Ostrow Street
San Diego, CA 92111

Counsel for Defendant AntiCancer, Inc.

By:/s/ Jeffrey M. Goehring
Jeffrey M. Goehring, 233002