Matthew D. Valenti (SBN 253978)
AntiCancer, Inc.
7917 Ostrow Street
San Diego, CA 92111
Tel:  (619) 654-2555
Fax: (619) 268-4175
Email: mattvalenti@anticancer.com

Attorney for Defendant AntiCancer, Inc.

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| MAUNA KEA TECHNOLOGIES,<br><br>    Plaintiff,<br><br>v.<br><br>ANTICANCER, INC.,<br><br>    Defendant. | Civil Action No. 11cv1407 AJB JMA<br><br>**REPLY MEMORANDUM IN SUPPORT OF ANTICANCER'S MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION**<br><br>Date: November 10, 2011<br>Time: 1:30 p.m.<br>Location: Courtroom 12<br>Judge:  Hon. Anthony J. Battaglia |

When Mauna Kea filed this declaratory judgment action, there was no specific, real or immediate controversy between AntiCancer and Mauna Kea as to *any* of the seven (7) patents that are addressed in Mauna Kea's complaint.  For reasons that are known only to Mauna Kea, Mauna Kea is trying to use the Declaratory Judgment Act as a vehicle for mounting an unprovoked attack on much of AntiCancer's GFP-related patent portfolio.

To support its assertion of subject matter jurisdiction, Mauna Kea relies heavily on a series of communications between AntiCancer's President (Dr. Hoffman) and Mauna

Kea's President (Dr. Loisseau) in early 2006. It is reasonable to say that, when Dr. Hoffman wrote his letters, he believed that some of Mauna Kea's customers were using Mauna Kea's optical imaging equipment in a way that would infringe AntiCancer's patented technologies.

However, <u>all</u> of the 2006 communications predated the Federal Circuit's December 13, 2006, *en banc* decision in *DSU Medical v. JMS Co., Ltd.*, 471 F.3d 1293 (Fed. Cir. 2006), which fundamentally changed the requirements for proving an "active inducement" of infringement under 35 U.S.C. §271(b). Before *DSU*, a plaintiff had to prove only that the defendant induced a third party to perform acts that constituted a direct infringement of a patent; it was not necessary to prove that the defendant knew or intended that the third party would infringe the patent.

In *DSU*, the Federal Circuit held that "the intent requirement for inducement requires more than just intent to cause the acts that produce direct infringement." *DSU*, 471 F.3d at 1306. Instead, "inducement requires evidence of culpable conduct, directed to encouraging another's infringement." *Id*. After *DSU*, a plaintiff had to prove that the defendant actually knew or intended that the third parties would infringe the patent.

The law of indirect patent infringement had fundamentally changed. Regardless of what Dr. Hoffman believed when he wrote his earlier letters, all of the correspondence from 2006 became moot. Mauna Kea never heard from Dr. Hoffman again after the Federal Circuit issued its *DSU* decision.

Mauna Kea also relies on a letter that Dan Lawton (AntiCancer's former counsel) wrote to Mauna Kea in November of 2010, requesting information about its activities. Mauna Kea tries to read words into Mr. Lawton's letter, saying it is "irrelevant" and "disingenuous" to characterize the letter as a request for information and not an "accusation of infringement." Opp. Brief at p. 6. But the letter did not mention any patents or patent infringement. Indeed, the letter expressly stated that it was a request for information only and that AntiCancer was not accusing Mauna Kea of any wrongful conduct. It was clear

from the letter that AntiCancer believed it lacked sufficient information to warrant filing a lawsuit suit against Mauna Kea at the time.

Mauna Kea ignored Mr. Lawton's request for information and never heard from AntiCancer again. Nonetheless, Mauna Kea used the letter as an excuse to file a declaratory judgment action in Pennsylvania, in an effort to provoke a fight over AntiCancer's patent portfolio. The district court in Pennsylvania later dismissed that action.

At page 4 of its opposition brief, Mauna Kea argues that "this case is highly analogous to *Micron Tech, Inc. v. Mosaid Tech., Inc.*, 518 F.3d 897, 901-902 (Fed. Cir. 2008) . . .". On the contrary, the facts of this case are very different from the facts of the *Micron* case. In the *Micron* case, Micron was one of the four leading "DRAM" (dynamic random access memory) computer chip manufacturers. The other three leaders were Samsung, Hynix and Infineon. Beginning in June of 2001, MOSAID sent a series of letters to Micron "strongly suggesting" that Micron should license MOSAID's technology. MOSAID also sued Samsung, Hynix and Inferion, one after the other, and eventually settled those cases at different times. *Micron,* 518 F.3d at 899.

But MOSAID's actions went far beyond just writing letters to Micron. After each settlement with the other three leading DRAM manufacturers, MOSAID issued public statements "reiterating its intent to pursue its aggressive licensing strategy." *Id*. In its 2005 annual report, MOSAID stated that its "remaining strategy is to license the remaining DRAM manufacturers" and that it would "apply our strong IP portfolio and our significantly improved financial position in the <u>aggressive</u> pursuit of this objective." *Id*. (emphasis in original). "Press reports predicted that Micron posed the next obvious target now that MOSAID had settled with the other three leading DRAM manufacturers (Samsung, Hynix and Infineon." *Id*. Then, on June 14, 2005, in a conference call with analysts, MOSAID "indicated its intent to return to court again soon on these patents promising to be 'unrelenting in the assertion of [its] patent portfolio.' " *Id.* at 900.

On July 24, 2005, Micron – the only one of the four industries leaders that had not been sued -- filed a declaratory judgment action in the Northern District of California. The <u>next day</u>, MOSAID filed an infringement action against Micron in the Eastern District of Texas. The California Court dismissed Micron's declaratory judgment, applying the "reasonable apprehension" test that was the later rejected by the Supreme Court in *Medimmune, Inc. v. Genentech, Inc.*, 127 S.Ct. 764 (2007). *Id.* at 900.

The Federal Circuit reversed the lower court's dismissal of the California declaratory judgment action, applying the test that had been set forth by the Supreme Court in *Medimmune, i.e.,* "whether the facts alleged under all the circumstances show that there is a substantial controversy between parties having adverse legal interests of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Id.* at 901.

In reversing the California district court's dismissal of Micron's declaratory judgment complaint, the Federal Circuit gave some weight to the letters that MOSAID had written to Micron in 2001 and 2002, four years before the declaratory judgment action was filed. It noted, "this [four year] time lapse is unavailaing because MOSAID, during this period, was busy negotiating with other leading DRAM manufacturers." *Id*. at 901. However, the opinion did not discuss "active inducement" under 35 U.S.C. §271(b), so the changes in the from the Federal Circuits *DSU* decision, and the impact of those changes on the relevance of MOSAID's letters, was not at issue. In this case, however, those changes in the law altered the relevance of AntiCancer's letters, sent in early 2006.

Moreover, the Federal Circuit in MOSAID made clear that the "threatening letters and behavioral observations are not Micron's only evidence about the authenticity of this dispute." *Id*. at 901. In particular, the Federal Circuit noted:

> MOSAID's recent public statements and annual reports also confirm its intent to continue an aggressive litigation strategy. In sum, the record evidence amply supports a real and substantial dispute between these parties. The record evidence at the time of filing in the California district court strongly suggested that MOSAID would sue Micron soon. Indeed, that suit, filed only

one day later, was actually pending in Texas at the time that the California district court made its ruling.  Thus, the parties in this dispute are really just contesting the location and right to choose the forum for the inevitable suit.

*Id*. at 901-902 (emphasis added).

The facts and the real circumstances of this case are very different.  After the exchange of letters in early 2006, AntiCancer did <u>nothing</u> that would give rise to any, specific, real and immediate controversy with Mauna Kea concerning <u>any</u> patents. AntiCancer never issued any public statements, annual reports or press releases suggesting that AntiCancer would sue Mauna Kea, as MOSAID had done to Micron.  AntiCancer also never accused Mauna Kea of infringement in any private communication.

Mauna Kea tries to compare AntiCancer to MOSAID, which had an "aggressive licensing strategy."  It is true that, between 2007 and 2010, AntiCancer filed nine patent infringement actions against various defendants.  However, of the five actions that AntiCancer filed before 2009, three were terminated on the Court's docket in 2008 and a fourth action was terminated in January of 2009.[1].

Thus, at least as early as 2008, AntiCancer had ample litigation capacity to sue Mauna Kea. But AntiCancer did not sue Mauna Kea.  It did not do anything that would provoke or create any controversy or dispute with Mauna Kea as to <u>any</u> of its patents. The fact that AntiCancer actively pursued infringement claims against other parties, but did not sue Mauna Kea, just highlights the lack of any specific, real and immediate controversy between AntiCancer and Mauna Kea.

Further, AntiCancer's past litigation activities are not as important as Mauna Kea suggests.  For example, in *Panavise Products, Inc. v. National Products, Inc.*, 2009 U.S.

---

[1]   Case No. 3:05cv00448 was terminated on 3/4/08, Case No. 3:07cv00778 was terminated on 6/3/08 and Case No. 3:07cv01004 was terminated on 8/5/08.  Case No. 3:07cv02294 was terminated on 1/12/09.  AntiCancer did not file any other infringement actions during that same period.

App. LEXIS 52 (Fed. Cir. 2009)(copy attached), the Federal Circuit affirmed the district court's dismissal of a declaratory judgment action for lack of subject matter jurisdiction, even though the patent owner had enforced the same patent in six previous lawsuits. The Federal Circuit explained as follows:

> Panavise submitted a request for judicial notice of six lawsuits initiated by NPI between January 27, 2005 and February 5, 2007, in which NPI asserted infringement of the '420 patent.  However, the last lawsuit was filed more than a year prior to Panavise's filing of this declaratory judgment action.  In addition, the '420 patent issued in December 2003.  While Panavise's Model 711, a device substantially identical to the allegedly "potentially infringing product," has been on the market since 1997, NPI has yet to accuse Panavise of infringement or take any actions which may imply such allegation.  The lack of any evidence that NPI plans to assert the '420 patent against Panavise prevents us from concluding that Panavise faces any immediate threat of future injury.
>
> [W]e recognize that "[p]rior litigious conduct is one circumstance to be considered in assessing whether the totality of circumstances creates an actual controversy."  However, there are many other circumstances that must also be considered.  In this case, the prior lawsuits in which NPI asserted the '420 patent concern different products.  Panavise does not argue or present any evidence to show that its Model 811 Series device is similar to any of those accused products.  The mere allegation that the Model 811 Series "potentially" infringes the '420 patent falls short of satisfying Panavise's burden of proof.  Therefore, *the fact that NPI routinely enforces its patent rights, when viewed under the totality of the circumstances in this case, is insufficient to create an actual controversy and establish subject matter jurisdiction*.

2009 U.S. App. LEXIS 52 at *10-11 (emphasis added)

In this case, four of the seven patents for which Mauna Kea seeks declaratory rulings have not been asserted since *at least as early as mid-2007*, more than four years ago. One of the patents (U.S. Patent No. 6,235,967) has *never been mentioned* to Mauna Kea or asserted in any lawsuit. The last time any of the seven patents was asserted was in a lawsuit filed in December of last year. Mauna Kea has not made any showing regarding any similarities between its product and the products at issue in any previous cases. Its

product has been on the market since at least 2006, but AntiCancer has never sued Mauna Kea for infringement.

Finally, in December of 2010, Mauna Kea filed a declaratory judgment action in Pennsylvania. In the *Micron* case, when Micron filed its declaratory judgment action in California, MOSAID filed its own action against Micron the <u>next day</u>. In this case, AntiCancer successfully moved to dismiss the Pennsylvania action, but did not file any suit of its own against Mauna Kea, in this or any other district, before or after Mauna Kea's Pennsylvania case had been dismissed. Again, this just highlights the lack of any specific, real and immediate controversy between AntiCancer and Mauna Kea. Any "controversy" has been generated solely by Mauna Kea, for reasons that only Mauna Kea knows.

Considering all the circumstances of this case, the Court should grant AntiCancer's motion and should dismiss Mauna Kea's declaratory judgment action for lack of subject matter jurisdiction.

.

Respectfully submitted:

Dated: September 13, 2011      By:     /s Matthew D. Valenti
                                       Matthew D. Valenti
                                       E-mail: mattvalenti@anticancer.com



PANAVISE PRODUCTS, INC., Plaintiff-Appellant, v. NATIONAL PRODUCTS, INC., Defendant-Appellee.

2008-1444

UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

*306 Fed. Appx. 570*; *2009 U.S. App. LEXIS 52*

**January 6, 2009, Decided**

**NOTICE:** THIS DECISION WAS ISSUED AS UNPUBLISHED OR NONPRECEDENTIAL AND MAY NOT BE CITED AS PRECEDENT. PLEASE REFER TO FEDERAL RULES OF APPELLATE PROCEDURE RULE 32.1 GOVERNING THE CITATION TO UNPUBLISHED OPINIONS.

**PRIOR HISTORY:** [**1]
  Appeal from United States District Court for the Central District of California in case no. 08-CV-1300, Judge Aubrey B. Collins.

**DISPOSITION:**  Affirmed.

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** In a declaratory judgment action, appellant manufacturer sought review of a decision of the U.S. District Court for the Central District of California, which granted appellee manufacturer's motion to dismiss the complaint for lack of subject matter jurisdiction. The parties both manufactured and sold suction cup mounting devices for portable equipment, and appellee held a patent for this device.

**OVERVIEW:** In its complaint, appellant alleged that it had publicly displayed and would soon commence distributing a product that potentially infringed appellee's patent. Appellant further alleged that appellee, which had filed at least six suits alleging infringement of its patent, had observed appellant's product at a trade show, and that this conduct placed appellant under a reasonable and serious apprehension of an imminent lawsuit. On appeal, the court agreed with the district court that appellant had not shown a substantial controversy upon which subject matter jurisdiction could rest. In particular, the court found that the district court applied the correct legal test and plainly took all of the relevant facts into account in determining subject matter jurisdiction. The only basis for appellant's declaratory judgment complaint was its assumption about a threat of future injury, which was insufficient to show that such a threat was real and immediate. The fact that appellee routinely enforced its patent rights, and had arguably observed the potentially infringing product, was insufficient to create an actual controversy and establish subject matter jurisdiction.

**OUTCOME:** The court affirmed the district court's decision dismissing the complaint.

**COUNSEL:** Joseph A. Walker, The Walker Law Firm, APC, of Newport Beach, California, for plaintiff-appellant. With him on the brief was Jason Matthew Lamb.

David K. Tellekson, Darby & Darby P.C., of Seattle, Washington, for defendant-appellee. With him on the brief were Robert L. Jacobson and Mark P. Walters.

**JUDGES:** Before MICHEL, Chief Judge, PROST, and MOORE, Circuit Judges.

**OPINION BY:** MICHEL

**OPINION**

   [*570]  MICHEL, *Chief Judge.*

306 Fed. Appx. 570, *; 2009 U.S. App. LEXIS 52, **

In this declaratory judgment action, Plaintiff-Appellant Panavise Products, Inc. ("Panavise") appeals from an order granting the motion to dismiss for lack of subject matter jurisdiction by Defendant-Appellee National Products, Inc. ("NPI"). *See* Minutes of In Chambers Order, *Panavise Prods., Inc. v. Nat'l Prods., Inc.,*

[*571] No. 08-1300 (C.D. Cal. May 30, 2008) ("Order"). Under the totality of the circumstances, Panavise has not shown a substantial controversy between Panavise and NPI upon which the court's subject matter jurisdiction may rest, despite an opportunity to respond to NPI's factual challenge. Therefore, we *affirm* the [**2] district court's dismissal of Panavise's complaint.

## I. INTRODUCTION

Both Panavise and NPI manufacture and sell suction cup mounting devices for portable equipment. NPI is the assignee of *U.S. Patent No. 6,666,420 ("the '420 patent")*. The *'420 patent* issued on December 23, 2003. Between January 27, 2005 and February 5, 2007, NPI initiated at least six separate lawsuits against various entities, alleging infringement of the *'420 patent*.

On February 26, 2008, Panavise filed a complaint for declaratory relief in the United States District Court for the Central District of California. Panavise alleged (1) that it "ha[d] manufactured and produced," "ha[d] publicly used and displayed," "ha[d] distributed and continue[d] to distribute samples of," and "[would] begin or ha[d] begun distribution and sales of" a "potentially infringing device known as the Model '811 Series;'" (2) that NPI observed the Model 811 Series at a trade show in Las Vegas in January 2008; and (3) that NPI has filed various lawsuits against various entities, alleging infringement of NPI's patents, including the *'420 patent*. Panavise also alleged that NPI's conduct "ha[d], and continue[d] to, put [Panavise] under a reasonable [**3] and serious apprehension of an imminent suit in light of the fact that [Panavise] ha[d] manufactured and produced a potentially infringing device." Panavise sought a declaratory judgment that its products did not infringe the *'420 patent*, and that the *'420 patent* was invalid and unenforceable.

NPI filed a motion to dismiss for lack of subject matter jurisdiction pursuant to *Fed. R. Civ. P. 12(b)(1)*. Panavise opposed. On May 30, 2008, the district court granted NPI's motion to dismiss. After correctly noting the subject matter jurisdiction standard in a declaratory judgment patent action under *MedImmune Inc. v. Genentech Inc., 549 U.S. 118, 127 S. Ct. 764, 166 L. Ed. 2d 604 (2007)* and *SanDisk Corp. v. STMicroelectronics, Inc., 480 F.3d 1372 (Fed. Cir. 2007)*, the court concluded that "[t]he absence of any communication or conduct by NPI towards Panavise about the 811 series devices [was] dispositive of the jurisdictional question: there [was] no actual case or controversy . . . ." Order at 5. It therefore dismissed Panavise's complaint.

Panavise timely appealed. We have jurisdiction pursuant to *28 U.S.C. ß 1295(a)(1)*.

## II. DISCUSSION

A. Standard of Review

We review a district court's dismissal of a patent claim for lack of [**4] subject matter jurisdiction *de novo. Sandisk, 480 F.3d at 1377*. We review the underlying factual findings for clear error. *Id.*

B. Analysis

In analyzing jurisdictional questions in declaratory judgment actions, there is no bright-line rule. *MedImmune, 127 S. Ct. at 771*. Instead, "the question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Id.*

Panavise argues that the district court failed to follow the *MedImmune* standard, and instead, applied the prior Federal Circuit standard that *MedImmune* overruled,

[*572] the "reasonable apprehension of imminent suit test." Specifically, Panavise emphasizes that the district court, in deeming the absence of any communication or conduct by NPI towards Panavise as "dispositive" of the jurisdictional question, committed a reversible error.

As an initial matter, because we review issues of jurisdiction *de novo,* we need not decide whether the logic or supporting rationale as stated by the district court was sound. *Mangosoft, Inc. v. Oracle Corp., 525 F.3d 1327, 1330 (Fed. Cir. 2008)*. [**5] *See also Acumed LLC v. Stryker Corp., 483 F.3d 800, 809 n.2 (Fed. Cir. 2007)* ("We review only the district court's finished product, not its process."). We realize that the word "dispositive" may have created the misimpression that the district court only considered a single factor in deciding the case. However, the district court expressly acknowledged the correct legal test under *MedImmune* and plainly took all the relevant facts into account in determining subject matter jurisdiction, as a reading of its entire Order shows. *See* Order at 3-5.

A party claiming declaratory judgment jurisdiction has the burden to establish the existence of such jurisdiction. *See Benitec Austl., Ltd. v. Nucleonics, Inc., 495 F.3d 1340, 1344 (Fed. Cir. 2007)*. In this case, Panavise alleged in its complaint that an actual controversy existed because of NPI's conduct, including the fact that NPI had asserted the *'420 patent* against various entities, as well as the "information and belief" that NPI observed the Model 811 Series, the "potentially infringing device." NPI filed a motion to dismiss, asserting that "the facts of this case [were] clearly outside the limits of federal court jurisdiction" under the [**6] Declaratory Judgment Act. In support, NPI submitted a declaration by its president and the sole inventor listed on the *'420 patent*, Jeffrey Carnevali. Mr. Carnevali stated (1) that neither he, nor anyone in his company, had ever "seen or evaluated the 811 Series Device;" (2) that he "was not even aware that Panavise made such a product until after their complaint was filed;" and (3) that his company and its lawyers "had absolutely no contact with Panavise relating to the 811 Series Device or the *'420 patent* prior to the date its complaint was filed."

In doing so, NPI mounted a factual attack of the asserted basis of subject matter jurisdiction. We have previously stated that if a declaratory judgment defendant adequately challenges jurisdiction in fact, "the allegations in the complaint are not controlling." *Cedars-Sinai Medical Ctr. v. Watkins, 11 F.3d 1573, 1583 (Fed. Cir. 1993)*. Therefore, as NPI's factual challenge was adequate, it placed the burden on Panavise to demonstrate *facts* sufficient to support its contention regarding the court's jurisdiction. *See id. at 1584* (stating that once jurisdiction is factually challenged, "allegations alone are insufficient to meet the complainant's [**7] burden."). In other words, Panavise must produce sufficient evidence to establish subject matter jurisdiction.

We recently reiterated that an actual "controversy must be based on a *real* and *immediate* injury or threat of future injury that is *caused by the defendants*--an objective standard that cannot be met by a purely subjective or speculative fear of future harm." *Prasco, LLC v. Medicis Pharm. Corp., 537 F.3d 1329, 1338 (Fed. Cir. 2008)* (emphasis in original). Panavise submitted a declaration by its president, Gary Richter, who stated that Panavise had "sold approximately 20,000 units of the Model '811 Series' suction cup mounts through a subsidiary to a foreign company that [would] import to and distribute [them] throughout the United States . . . ." Panavise did not allege, however, that NPI actually restrained its right to freely market

 **[*573]** its products before or at the time the complaint was filed. To the contrary, Mr. Richter stated that starting from as early as 1997, Panavise distributed and sold in the public a suction cup mount known as the Model 711, a device identical to the Model 811 Series, "except for some minor structural differences." Therefore, the only basis for Panavise's **[**8]** declaratory judgment complaint is its assumptions about a threat of future injury. Under settled law, Panavise must present factual proof that such threat is real and immediate. Panavise failed to meet this threshold burden.

In its opposition to NPI's motion to dismiss, Panavise argued that its complaint had put NPI "on notice of the adverse legal interests of the parties." In addition, Mr. Richter stated in his declaration that NPI was "a known and recognized competitor of Panavise," that both Panavise and NPI had booths at the Las Vegas trade show, and that it was "important to visit the booths of known and recognized competitors to observe the new products being offered in the marketplace." We take these statements as suggesting that NPI observed the "potentially infringing device." This information is the same as that alleged in the complaint and therefore, is insufficient to rebut NPI's factual challenge of jurisdiction. Furthermore, as the district court correctly pointed out, the suggestion that NPI actually knew of the Model 811 Series is mere speculation--there is nothing "definite and concrete," and nothing "real and substantial," as Panavise has never presented any evidence **[**9]** and proof to support its allegation. *See MedImmune, 127 S. Ct. at 771*. In fact, the only evidence before the court was Mr. Carnevali's declaration denying that NPI observed the Model 811 Series in Las Vegas or was even aware of its existence before the filing of the complaint.

Nor, in view of the evidence do we see the immediacy of any threat of future injury. Panavise submitted a request for judicial notice of six lawsuits initiated by NPI between January 27, 2005 and February 5, 2007, in which NPI asserted infringement of the *'420 patent*. However, the last lawsuit was filed more than a year prior to Panavise's filing of this declaratory judgment action. In addition, the *'420 patent* issued in December 2003. While Panavise's Model 711, a device substantially identical to the allegedly "potentially infringing product," has been on the market since 1997, NPI has yet to accuse Panavise of infringement or take any actions which may imply such allegation. The lack of any evidence that NPI plans to assert the *'420 patent* against Panavise prevents us from concluding that Panavise faces any immediate threat of future injury.

We do not, of course, mean that the lack of direct pre-complaint communication **[**10]** between a patentee and a declaratory plaintiff by itself is sufficient to defeat subject matter jurisdiction. See *SanDisk, 480 F.3d at 1381* (stating that "the outer boundaries of declaratory judgment jurisdiction . . . depend[s] on the application of the principles of declaratory judgment jurisdiction to the facts and circumstances of each case."). On the contrary, we recognize that "[p]rior litigious conduct is one circumstance to be considered in assessing whether the totality of circumstances creates an actual controversy." *Prasco, 537 F.3d at 1341*. However, there are many other circumstances that must also be considered. In this case, the prior lawsuits in which NPI asserted the *'420 patent* concern different products. Panavise does not argue or present any evidence to show that its Model 811 Series device is similar to any of those accused products. The mere allegation that the Model 811 Series "potentially" infringes the *'420 patent* falls short of satisfying Panavise's burden of proof. Therefore, the fact that NPI routinely enforces its patent rights, when viewed under the totality of the circumstances

**[*574]** in this case, is insufficient to create an actual controversy and establish **[**11]** subject matter jurisdiction.

C. Sanction

NPI files a motion for sanctions under *Fed. R. App. P. 38*. We deny NPI's motion. Although the appeal can be viewed as very weak from both a factual and a legal stand point, we do not agree that it rises to the level of frivolousness. At the same time, we do note that this appeal approaches wasting the court's time and unduly delaying more deserving litigants.

**III. CONCLUSION**

For the foregoing reasons, we affirm the district court's dismissal of Panavise's complaint.

## CERTIFICATE OF SERVICE

I hereby certify that, on September 14, 2011, the foregoing document entitled **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ANTICANCER'S MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION** was filed via the Case Management/Electronic Case Filing (CM/ECF) system, with service to be made on all parties via the automated generation and e-mailing of a Notice of Electronic Filing (NEF) by the CM/ECF system.

/Matthew D. Valenti
Matthew D. Valenti
E-mail: mattvalenti@anticancer.com