UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MAUNA KEA TECHNOLOGIES, | Civil No. 11cv1407 AJB (JMA) |
| Plaintiff, | ORDER DENYING |
| v. | MOTION TO DISMISS |
| ANTICANCER, INC., | [Doc. No. 8] |
| Defendants. | |

Plaintiff Mauna Kea Technologies ("MKT") brings this action against Defendant AntiCancer, Inc. ("AntiCancer") for a declaratory judgment of non-infringement, invalidity, and unenforceability of AntiCancer's seven patents. AntiCancer filed a motion to dismiss for lack of subject matter jurisdiction [Doc. No. 8]. The Plaintiff filed an opposition [Doc. No. 10], and the Defendant filed a reply [Doc. No. 12]. The hearing set for November 10, 2011 at 1:30 p.m. before Judge Battaglia is hereby VACATED as this motion is appropriate for submission on the papers without oral argument pursuant to Civil Local Rule 7.1.d.1. Based upon the parties' moving papers and for the reasons set forth herein, the Defendant's motion to dismiss [Doc. No. 8] is hereby DENIED.

### *Background*

AntiCancer is a California corporation with its principal place of business in San Diego and holds numerous patents covering in vivo green fluorescence protein ("GFP") imaging. MKT is a French corporation with its principal place of business in Paris, France and sells the CellVizio imaging device.

MKT filed this Complaint for declaratory relief seeking a determination that MKT does not infringe any claim of AntiCancer's U.S. Patent Nos. 6,232,523; 6,235,967; 6,235,968; 6,251,384; 6,649,159; 6,759,038; and 6,905,831 ("Patents-In-Suit").  MKT contends that AntiCancer created an actual case or controversy through: 1) repeated assertions in correspondence between MKT and AntiCancer, that MKT must obtain a license under at least six patents identified by AntiCancer, as well as other unidentified AntiCancer patents; and 2) filing numerous actions in this Court accusing other companies of infringing the same patents which AntiCancer is asserting against MKT.

*I. The Correspondence at Issue*

The communications MKT relies upon in bringing the instant action consist of four letters between MKT and AntiCancer in 2006 and one letter in 2010.

*A. The 2006 Letters*

The correspondence begins with the January 17, 2006 letter from AntiCancer's founder and CEO, Dr. Robert Hoffman, to Dr. Sacha Loisseau of MKT. [Doc. No. 8-3.] The letter specifically identifies six patents as well as unspecified "pending world-wide patents" and alleges that "[i]t is clear" that the "prime use" of the instruments sold and promoted by MKT is to practice the imaging techniques claimed in AntiCancer's patents and pending applications.[1] The letter states, "Therefore, it is necessary for MKT to have a license from AntiCancer to sell this instrument." The letter goes on to dictate conditions for the demanded licenses, noting that the license will provide MKT's customers "full rights to sell and use" MKT's product. The letter closes by requesting AntiCancer designate a person to "begin negotiations."

On February 9, 2006, MKT's counsel sent a letter to Dr. Hoffman, informing AntiCancer that its license demand was "far too broadly stated." MKT's counsel cited AntiCancer's lack of specifics regarding the alleged infringement and requested AntiCancer identify the specific patent claims allegedly infringed and the specific products accused, as well as identify and provide copies of the

---

[1] AntiCancer's letter asserted the following U.S. Patents: No. 6,232,523; No. 6,235,968; No. 6,251,384; No. 6,649,159; No. 6,759,038; No. 6,905,831; European Patent 0437488; as well as unidentified "pending world-wide patents."  Although U.S. patent No. 6,235,967 was not specifically asserted in the January 2006 letter, MKT contends that it is part of the same family of patents as the others and covers the same general technology.

pending applications referenced by Dr. Hoffman to allow MKT to make a good faith evaluation of AntiCancer's assertions that a license was "necessary." [Doc. No. 10-1, p.3.]

Dr. Hoffman's response on March 22, 2006 did not address any of the concerns of MKT's counsel set forth in the February 9, 2006 letter and was addressed to Dr. Sacha Loisseau of MKT. Dr. Hoffman again alleged that AntiCancer's patents "clearly cover" MKT's product(s) and application(s) and included a "term sheet" requiring the payment of hundreds of thousands of dollars.

MKT's counsel wrote back to Dr. Hoffman on April 6, 2006, again stating that it was unreasonable for AntiCancer to allege infringement in such unspecified terms. [Doc. No. 10-1 p.8.] MKT's counsel further stated that MKT was unwilling to consider negotiation of a license without knowing at least which claims of which patents were asserted to cover which products or activity and in what manner. MKT again requested AntiCancer identify the relevant claims of each patent. *Id.* AntiCancer did not respond to this request.

### *B. The 2010 Letter*

On November 22, 2010, more than four years later, AntiCancer's counsel sent MKT's counsel a letter accompanied by an email that acknowledged the prior 2006 correspondence, stating that MKT's counsel was being contacted "based on review of prior correspondence." [Doc. No. 8-5 p.1-3.] AntiCancer's letter stated that it was not accusing MKT of infringement, but demanded MKT respond to

a series of interrogatory-like questions regarding MKT's activities "during the past six years"[2] and requested MKT provide its response by December 3, 2010. *Id.*

Two weeks after receiving the 2010 Letter, MKT filed a declaratory judgment action against AntiCancer in the Eastern District of Pennsylvania seeking judgment of invalidity and non-infringement of the patents at issue in this case. [Compl. ¶ 16.]  The Pennsylvania action was dismissed for lack of personal jurisdiction. [Compl. ¶ 18.] MKT subsequently filed the same declaratory judgment suit against AntiCancer with this Court on June 27, 2011.  AntiCancer filed the instant motion to dismiss for lack of subject matter jurisdiction.

### *II. AntiCancer Litigation Involving the Patents*

AntiCancer initiated nine lawsuits for patent infringement in the Southern District California, many of which assert the same patents at issue in this case.[3]

---

[2] AntiCancer's questions from the November 22, 2010 letter are as follows:
During the past 6 years, has [MKT] (or any person acting on its behalf):
   1. Administered any protocol or drug to a mammalian subject which contains a tumor containing cells which express [GFP]?
   2. Monitored the progression of metastasis in any such animal via observation of a tumor which express GFP?
   3. Employed a technique known as surgical orthotopic implantation of tumor cells into a mammalian subject?
   4. Injected into a live animal cells of a stably transformed tumor cell line which has been transfected with GFP?
   5. Monitored any progression of metastasis by excising fresh organ tissues from a mammalian subject, including via microscopic examination?
   6. Employed any means of monitoring of progression of metastasis in any mammalian subject via a process known as fluorescent optical tumor imaging in the body of a live animal?
   7. Delivered, to an animal, cells containing a nucleic acid encoding a fluorophore operatively linked to the promoter of an endogenous gene?
   8. Observed fluorescence generated by a fluorophore in the animal via a process known as whole-body external fluorescent optical imaging?
   9. Delivered to an animal any such cell via a surgical procedure and/or surgical orthotopic implantation?
   10. Using a skin flap, observed tumor progression, angiogenesis and/or metastasis in animal models in real time using fluorescent tumor cells?

[3] The following is a list of the AntiCancer cases in the Southern District California:
- 3:05-cv-00448-JLS-AJB filed 03/07/2005 asserting Patent Nos. 6,232,523; 6,235,968; 6,251,384; 6,649,159; 6,759,038;
- 3:07-cv-00097-JLS –RBB filed 01/12/2007 asserting infringement of Patent Nos. 6,232,523; 6,235,968; 6,251,384; 6,649,159; 6,759,038;
- 3:07-cv-00778-JAH-BLM filed 04/27/2007 asserting infringement of Patent Nos. 5,491,284 and 5,569,812, as well as various other claims;
- 3:07-cv-02294-MMA-BLM filed 12/07/2007 asserting infringement of Patent Nos. 5,998,191; 6,066,467; 6,140,102; 6,448,446; and 6,468,762; as well as

## *Discussion*

The Declaratory Judgment Act provides that "[i]n a case or actual controversy . . . any court of the United States . . . may declare the rights and other legal relations of any interested party." 28 U.S.C. 2201(a).  The word "may" within the language of the Declaratory Judgment Act means that a court has discretion to accept a declaratory judgment action in the first place: "In a case of actual controversy within its jurisdiction . . . any court . . . may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."  28 U.S.C. § 2201(a) (emphasis added).  Even when jurisdiction is present, district courts retain some measure of discretion to decline to hear the case.[4]  Although broad, that discretion is not absolute.[5]  A district court, when deciding whether to exercise its discretion, should decide whether hearing the case would "serve the objectives for which the Declaratory Judgment Act was created."[6]  When these objectives are served, dismissal is rarely proper.  *Id.*  Whether intended or not, the now more lenient legal standard facilitates or enhances the availability of declaratory judgment jurisdiction in patent cases.[7]

---

various other claims;
- 3:07-cv-01004-JLS –AJB filed 06/01/2007 asserting infringement of Patent Nos. 6,232,523; 6,235,968; 6,251,384; 6,649,159; 6,759,038;
- 3:09-cv-00351-JLS –RBB filed 02/23/2009 asserting infringement of Patent Nos. 6,251,384; 6,649,159; 6,759,038;
- 3:09-cv-01311-AJB –JMA filed 06/17/2009 asserting infringement of Patent Nos. 6,251,384; 6,649,159; 6,759,038;
- 3:10-cv-02343-JAH –JMA filed 11/15/2010 asserting infringement of Patent Nos. 6,649,159 and 6,759,038;
- 3:10-cv-02515-MMA –BLM filed 12/08/2010 asserting infringement of Patent Nos. 6,649,159 and 6,759,038 as well as various other claims.

[4] *Wilton v. Seven Falls Co.*, 515 U.S. 277, 289, 115 S.Ct. 2137, 132 L.Ed.2d 214 (1995).

[5] *See Genentech, Inc. v. Eli Lilly & Co.*, 998 F.2d 931, 936 (Fed. Cir.1993) (citing 10A Charles A. Wright, Arthur R. Miller, Mary Kay Kane, Federal Practice and Procedure § 2759, at 655–56 (2d ed.1983 and Supp.1992)); *see also Capo*, 387 F.3d at 1355 (citing *Public Affairs Assocs., Inc. v. Rickover*, 369 U.S. 111, 112, 82 S.Ct. 580, 7 L.Ed.2d 604 (1962)) ("There must be well-founded reasons for declining to entertain a declaratory judgment action.").

[6] *Capo, Inc. v. Dioptics Med. Prods., Inc.*, 387 F.3d 1352, 1355 (Fed.Cir.2004) (quoting *EMC Corp. v. Norand Corp.*, 89 F.3d 807, 814 (Fed. Cir.1996)).

[7] *Sony Elecs. Inc., v. Guardian Media Techs., Ltd.*, 497 F.3d 1271 (Fed.Cir.2007) (remand of district court's dismissal of declaratory judgment action); *Teva Pharms. USA, Inc. v. Novartis Pharms. Corp.*, 482 F.3d 1330 (Fed.Cir.2007) (reversal of district court's dismissal of declaratory judgment action); *SanDisk Corp.*, 480 F.3d 1372 (remand of district court's dismissal of declaratory judgment action).

"The phrase 'case or actual controversy' refers to the type of 'Cases' and 'Controversies' that are justiciable under Article III [of the Constitution]." *Sony Elecs., v. Guardian Media Techs., Ltd.*, 497 F.3d 1271, 1283 (Fed. Cir. 2007). A declaratory judgment plaintiff is required to satisfy Article III, which includes standing and ripeness, by showing under "all the circumstances" an actual or imminent injury caused by the defendant exists that can be redressed by judicial relief which is of "sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *MedImmune*, 127 S.Ct. at 771 (internal citations omitted).

Actual controversy exists "where the patentee takes a position that puts the declaratory judgment plaintiff in the position of either pursuing arguably illegal behavior or abandoning that which he claims a right to." *SanDisk Corp. v. STMicroelectronics, Inc.*, 480 F.3d 1372, 1381 (Fed. Cir. 2007). "The purpose of the Declaratory Judgment Act . . . in patent cases is to provide the allegedly infringing party relief from uncertainty and delay regarding its legal rights." *Goodyear Tire & Rubber Co. v. Releasomers, Inc.*, 824 F.2d 953, 956 (Fed.Cir.1987). In *Electronics for Imaging*, the Federal Circuit elaborated on the purposes of the Act:

> [A] patent owner . . . attempts extra-judicial patent enforcement with scare-the-customer-and-run tactics that infect the competitive environment of the business community with uncertainty and insecurity . . . . Before the Act, competitors victimized by that tactic were rendered helpless and immobile so long as the patent owner refused to grasp the nettle and sue. After the Act, those competitors were no longer restricted to an *in terrorem* choice between the incurrence of a growing potential liability for patent infringement and abandonment of their enterprises; they could clear the air by suing for a judgment that would settle the conflict of interests.

*See Elecs. for Imaging, Inc. v. Coyle*, 394 F.3d 1341, 1346 (Fed.Cir.2005) (quoting *Arrowhead Indus. Water, Inc. v. Ecolochem, Inc.*, 846 F.2d 731, 735 (Fed.Cir.1988)).

The test for subject matter jurisdiction in a declaratory relief action is "whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between the parties having adverse legal interest, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 126 (2007) (quoting *Md. Cas.*, 312 U.S. at 273, 61 S.Ct. 510). In short, "all the circumstances" must show a controversy.

AntiCancer argues in the motion to dismiss that MKT has not alleged sufficient facts to establish the existence of any controversy between AntiCancer and MKT that is substantial, immediate, and real

and as such, the Court should exercise its broad discretion to dismiss this declaratory judgment action. Alternatively, MKT argues that the parties' correspondence in 2006 clearly established a real and substantial dispute, and the intervening four years did not eliminate the immediacy of that dispute in light of AntiCancer's aggressive litigation strategy, and in light of AntiCancer's renewal of the dispute with MKT's November 2010 letter.  MKT argues, and this Court agrees, that this case is analogous to *Micron Tech., Inc. v. Mosaid Tech., Inc.*, 518 F.3d 897, 901-902 (Fed. Cir. 2008).

In *Micron*, the plaintiff was one of four leading dynamic random access memory chip (DRAM) manufacturers.[8] *Micron*, 518 F.3d at 899.  Defendant MOSAID owned several DRAM chip patents, which were licensed to the other main manufactures. *Id.*  In June 2001, MOSAID sent a warning letter to plaintiff "strongly suggesting" that plaintiff license its technology, and three additional follow-up letters within thirteen months of the initial letter.  However, plaintiff did not file a declaratory judgment action against MOSAID until four years after receiving the last letter.

Because the four major DRAM manufacturers did not take licenses, MOSAID began enforcing its patents in court. MOSAID sued each of the DRAM manufacturers, and one by one these cases were settled when the manufacturer agreed to a license.[9]  After each licensing agreement, MOSAID issued public statements reiterating its intent to pursue its aggressive licensing strategy. MOSAID also made similar statements in its annual reports.[10]

Micron filed a declaratory action in the Northern District of California on July 24, 2005, seeking a declaration of noninfringement of fourteen MOSAID patents. The next day, MOSAID filed an infringement action against Micron in the Eastern District of Texas asserting seven patents and naming

---

[8] Samsung Electronics Company Ltd. (Samsung), Hynix Semiconductor Inc. (Hynix), Infineon Technologies of North America (Infineon), and Micron account for more than 75% of worldwide DRAM sales. MOSAID Technologies, Inc.

[9] MOSAID began by suing Samsung. Suspecting it was likely next on the list, Infineon filed an action seeking a declaratory judgment that it was not infringing MOSAID's patents. After a claim construction unfavorable to MOSAID, Infineon won a summary judgment of noninfringement.  Later in the ongoing saga of litigation, Samsung and MOSAID settled. On the day of the settlement, MOSAID sued Hynix. The case against Hynix settled as well when Hynix agreed to a license. On April 6, 2005 MOSAID asserted three new patents against Infineon. This case also settled when Infineon agreed to a license.

[10] Press reports following MOSAID June 14, 2005 conference call with analysts predicted that Micron posed the obvious next target now that MOSAID had settled with the other three leading DRAM manufacturers (Samsung, Hynix, and Infineon).

two additional small DRAM manufacturers as defendants. MOSAID filed a motion to dismiss for lack of subject matter jurisdiction under Article III of the United States Constitution or the Declaratory Judgment Act, 28 U.S.C. § 2201. The District Court for the Northern District of California granted the motion to dismiss, finding no jurisdiction under the reasonable apprehension of suit test.[11]

In granting MOSAID's motion to dismiss, the district court noted MOSAID's pattern of litigation, but ultimately decided that "MOSAID's conduct was not sufficient to give rise to a reasonable apprehension of litigation[12] against Micron." *Micron*, 2006 WL 3050865 at *5. Specifically, the district court cited the record of no threats against Micron for the last four years, of no threats to Micron's customers, and of no public comments from MOSAID that mentioned Micron by name. *Id.* The district court also held that even if subject matter jurisdiction were established, it would exercise its discretion and still decline to hear the case. The Federal Circuit subsequently reversed the district court's ruling, finding the four year lapse of time unavailing, because during that period, MOSAID was busy litigating and negotiating against the other three leading DRAM manufacturers. 518 F.3d at 901. In reversing the district court's dismissal, the Federal Circuit clearly stated that MOSAID's "threatening letters and behavioral observation are not [plaintiff]'s only evidence" of a dispute and that "in sum, the record evidence amply supports a real and substantial dispute." *Id.* at 901.

The same is true in the instant case. The parties' correspondence in 2006 clearly established a real and substantial dispute. The intervening four years between the 2006 and 2010 letters does not eliminate the immediacy of that dispute in light of AntiCancer's litigation with all the major competitors in the market and AntiCancer's renewal of the dispute with MKT with the November 2010 letter. Under the totality of circumstances of the facts alleged, MKT has sufficiently demonstrated a real and substantial dispute between the parties. *Id.* at 897 (noting that patentees aggressive licensing and litigation strategy amply supports a real and substantial dispute between the parties); *In re Casino De Monaco Trademark Litig*., 2010 U.S. Dist. LEXIS 33950 (S.D.N.Y. Mar. 31, 2010) ("While a threat of suit is not necessary to declaratory judgment jurisdiction, an aggressive litigation strategy (such as what

---

[11] *Micron Tech. Inc., v. MOSAID Techs., Inc.*, No. C 06–4496, 2006 WL 3050865, 2006 U.S. Dist. LEXIS 81510 (N.D.Cal. Oct. 23, 2006) ( Jurisdiction Order ).

[12] The district court's "tenuous at best" determination relied on the now-defunct reasonable apprehension of suit test.

was demonstrated in this three year litigation) may signal the existence of an actual controversy."); *Pharmanet, Inc. v. DataSci, LLC*, 2009 U.S. Dist. LEXIS 11661 (D.N.J. Feb. 17, 2009) (a patentee's history of litigation with other parties is an appropriate factor for courts to consider in determining whether subject matter jurisdiction exists under the Declaratory Judgment Act.)

Based upon the foregoing, the Court finds subject matter jurisdiction exists in this case and would "serve the objectives for which the Declaratory Judgment Act was created."[13] As such, AntiCancer's motion to dismiss is DENIED.

### *Conclusion*

For the reasons set forth above, AntiCancer's motion to dismiss for lack of subject matter jurisdiction is DENIED.

IT IS SO ORDERED.

DATED:  November 9, 2011

_____
Hon. Anthony J. Battaglia
U.S. District Judge

---

[13] *Capo, Inc. v. Dioptics Med. Prods., Inc.*, 387 F.3d 1352, 1355 (Fed.Cir.2004) (quoting *EMC Corp. v. Norand Corp.*, 89 F.3d 807, 814 (Fed. Cir.1996)).